AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>TIMOTEO SON-GONZALEZ<br><br>*Defendant(s)* | Case No.  3:25-mj- 1084-LLL |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of **February 12, 2025** in the county of **Columbia** in the **Middle** District of **Florida**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 USC §§ 1324(a)(1)(A)(ii), (a)(1)(B)(i). | Unlawful Transportation of an Alien for the Purpose of Private Financial Gain. |

This criminal complaint is based on these facts:
See Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Stephen Garland, Border Patrol Agent, DHS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 18, 2025

_____
*Judge's signature*

City and state: Jacksonville, FL

Laura Lothman Lambert, U.S. Magistrate Judge
*Printed name and title*

AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT
AND MATERIAL WITNESS WARRANTS

I, Stephen Garland, being a duly sworn and appointed Border Patrol Agent (BPA) for the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, hereby make the following statement.

1. I am a BPA for the United States Border Patrol and have been so employed for over 16 years. I have training and experience in the enforcement of the immigration and nationality laws of the United States. In addition, I have training and experience in the preparation, presentation, and service of criminal complaints and arrest warrants.

2. The statements contained in this affidavit are based on my personal experience and observations, as well as the experiences and observations of fellow Border Patrol Agents and other law enforcement officers as they have described them to me. This affidavit does not contain every fact regarding the investigation but sets forth sufficient facts to establish probable cause to believe that on February 12, 2025, TIMOTEO SON-GONZALEZ,[1] a citizen of Guatemala, transported an alien who was unlawfully present in the United States for the purpose of private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (a)(1)(B)(i).

---

[1] TIMOTEO SON-GONZALEZ has previously used multiple aliases during immigration encounters. However, when his fingerprints were run through a biometrics database, it revealed he was previously removed under the name TIMOTEO SON-GONZALEZ.

3.      This affidavit also sets forth probable cause to believe that MARIO MEJIA-NIMAJA, ESTUARDO MORALES-MIRANDA, and WILDER NAJERA-ARRIOLA, all citizens of Guatemala, are material witnesses in the criminal proceedings against SON-GONZALEZ; that it would be impracticable to secure their presence by subpoena; and, therefore, that material witness warrants should be issued to secure their presence pursuant 18 U.S.C. § 3144.

4.      From training and experience, I know that criminal alien smuggling operations transport illegal aliens unlawfully in the United States from the border with Mexico to staging cities near the border in California, Arizona, New Mexico, and Texas. After they arrive in these cities, alien smugglers load the illegal aliens into vehicles and transport them to metropolitan areas in the United States. This travel is often broken into several different segments utilizing different drivers and vehicles in order to minimize detection. The smuggled illegal aliens are primarily from Mexico, Guatemala, Honduras, and El Salvador. Smuggling cartels in the United States are usually operated by Mexican nationals in Mexico and in the United States.

5.      On February 12, 2025, at approximately 6:30 a.m., BPA Thomas Shaffer and I were patrolling Interstate 75 (I-75) in Columbia County, Florida, when I observed a blue Toyota 4Runner travelling in the southbound lanes that matched the description of a vehicle for which the U.S. Border Patrol had intelligence associating the vehicle with the transportation of illegal aliens between Atlanta, Georgia, and South Florida. The vehicle had a Georgia license plate with the number SFD0279.

6. The observation of this vehicle and direction of travel was relayed to Supervisory Border Patrol Agent (SBPA) Matt Bowers and BPA Michael Wright, who were patrolling on I-75 south of the vehicle's location.

7. I contacted the U.S. Border Patrol's Miami Sector Dispatch via service radio and requested confirmation of the registered owner of the vehicle. The vehicle registration returned to Guatemex Interior Remodeling LLC, in Atlanta, Georgia. Prior research of this company showed Byron Lorenzo Gomez-Gonzalez as the company's organizer and owner. Prior queries of Gomez-Gonzalez within immigration databases returned records that showed him to be a citizen and national of Guatemala who was illegally present in the United States.

8. As the vehicle continued south on I-75, SBPA Bowers conducted a stop at mile marker 426 in Columbia County. SBPA Bowers identified himself as a United States Border Patrol Agent and asked the driver for identification. The driver produced a California driver's license identifying him as TIMOTEO SON-GOMEZ, later identified as SON-GONZALEZ. SBPA Bowers asked SON-GONZALEZ if he was a United States citizen; SON-GONZALEZ stated he was not and that he was a citizen of Guatemala. SBPA Bowers asked SON-GONZALEZ if he had any immigration documents allowing him to be or remain in the United States legally, to which SON-GONZALEZ replied that he did not. SON-GONZALEZ was then asked to exit the vehicle and placed under administrative arrest for being illegally present in the United

3

States. During a search of SON-GONZALEZ, $1,031 in cash was found on his person.

9. Research of the CARFAX web site shows that the vehicle being driven by SON-GONZALEZ received a Georgia state inspection on January 10, 2024, and was purchased on February 1, 2024. Records from the National Law Enforcement Telecommunication System reflect an effective registration date of March 21, 2024, registering the vehicle to Guatemex Interior LLC in Atlanta, Georgia. The vehicle mileage at the time of the inspection was 97,019. The vehicle's odometer at the time of this vehicle stop was 204,537 miles, meaning the vehicle had been driven 107,518 miles since the inspection, which occurred 13 months prior. This averages out to 8,271 miles per month. For comparison, according to the U.S. Department of Transportation (fhwa.dot.gov), the national average of miles driven per month is 1,123.

10. In addition to SON-GONZALEZ, the vehicle contained six passengers, identified as MARIO MEJIA-NIMAJA, ESTUARDO ALBERTO MORALES-MIRANDA, WILDER ARMANDO NAJERA-ARRIOLA, Miguel Guzman-Lopez, Juan Macario-Elias, and Rubi Perez-Pablo. All of the passengers were questioned regarding their citizenship, and all passengers said that they were citizens and nationals of Guatemala. All of the passengers were asked if they had any immigration documents allowing them to be or remain in the United States legally, to which all of

them replied they did not. All of the passengers were placed under administrative arrest for being illegally present in the United States.

11. All of the vehicle occupants were transported to the Jacksonville Border Patrol Station for further questioning, biometric confirmation, and processing. During processing, BPA Jose Valentin entered the subjects' names, dates of birth, and fingerprints into a biometric identification system to determine whether they had previously been encountered by immigration authorities. The records reflected that SON-GONZALEZ was previously removed from the United States on June 13, 2024, and that passenger Guzman-Lopez was previously removed from the United States on November 13, 2023. Aside from those, there were no records of any previous immigration encounters with the other passengers, or of any applications by them for permission to enter, pass through, or remain in the United States, confirming they had not entered the United States legally.

12. At the Border Patrol Station, BPA Juan Miranda interviewed MARIO MEJIA-NIMAJA in Spanish. During the interview, MEJIA-NIMAJA stated he is a Guatemalan citizen, born in Chiche, Guatemala. He stated that he does not have any immigration documents and that he knows he is here illegally. MEJIA-NIMAJA was asked how and where the arrangements for smuggling him into the United States were made and he stated that the arrangements were made in person, in Guatemala. He stated he did not know the person that organized the trip. He stated that he had paid the equivalent of $20,000 in cash to the smuggler for his smuggling fee, and that he

5

took out a loan and makes monthly payments to the bank. He stated that he entered the United States on February 1, 2024, by walking through the desert but that he did not remember where he was picked up.

13. MEJIA-NIMAJA was asked where he was going when the vehicle was stopped on February 12, 2025, and said that he was traveling to Miami, Florida, from Salt Lake City, Utah, where he had been previously staying. MEJIA-NIMAJA stated his purpose of traveling to Florida was for more work because he works in construction and the cold weather had slowed work in Salt Lake City. He was asked how much he was to pay for this trip and how the payment was to be made. He stated that he was to pay $1,300 in total. He said that he paid $400 when he was picked up in Salt Lake City, with the remainder due when he was dropped off in Miami. He was asked if he was transported in the same vehicle the entire time and he stated he was not, that he was in a white SUV from Salt Lake City to Atlanta and changed vehicles, and drivers, in Atlanta. He said that he did not know either driver, including SON-GONZALEZ. He stated that the vehicles met in a parking lot, but he did not know the exact location. He was asked if the person driving him knew he was here illegally and he stated yes, and that if not, they would not be traveling at midnight.

14. BPA Miranda also interviewed passenger ESTUARDO MORALES-MIRANDA in Spanish. During the interview, MORALES-MIRANDA stated that he was born in Guatemala, that he did not have immigration documents to be in the United States, and that he was here illegally. MORALES-MIRANDA stated that he

had crossed the U.S./Mexico border on foot about 15 days prior to the vehicle being stopped. He said that he was going to Florida but that he did not know the name of the city. He said that he paid a little more than $10,000 for his smuggling fee to make entry into the United States and that further travel arrangements were made once he made entry. He stated that he rode in about three different vehicles prior to the one he was stopped in and that he had been in that vehicle for about one hour. He was asked how he paid for the transportation, to which he replied that he paid each driver at drop off as he progressed through the United States. When asked how he knew which car to get into, he said that someone would tell him. He was asked if he knew the driver (SON-GONZALEZ), to which he replied that he did not. He was asked if the driver knew he was illegally present in the United States and he said that he imagined he did based on how they did things, as "it is their job." He was asked where he was housed along his trip, and he stated that he was kept on small ranches and in various houses.

15. BPA Miranda also interviewed WILDER NAJERA-ARRIOLA in Spanish. NAJERA-ARRIOLA stated that he is a citizen of Guatemala with no immigration documents allowing him to be in the United States legally. He stated that he had crossed the U.S./Mexico border by climbing over a wall last Thursday (that is, February 6, 2025) near Tecate, Mexico. He said that his destination in the United States was Miami, Florida, as he was going there to work and because his stepfather lives there. He was asked how much he paid for his smuggling fee, and he stated that

he paid about 50,000 Quetzales, or about $6,500. He said that he paid 8,500 Quetzales, or about $1,100, in Guatemala, and 41,000 Quetzales, or about $5,300, at the U.S./Mexico border prior to crossing, and that his stepfather in Miami was to pay an unknown amount when he reached his destination. He stated that arrangements were made in Guatemala via telephone and that the number he called was a Guatemalan phone number.

16. NAJERA-ARRIOLA stated that he was driven from the Los Angeles, California, area to Atlanta, Georgia, where he was dropped off at a house early Tuesday morning (February 11, 2025). He was asked how he knew who was going to pick him up at the house and he said that a man in the house told him when to get ready. He said that he was walked out of the back of the house when the vehicle arrived. He stated that he was in this same vehicle with the same driver (SON-GONZALEZ) the entire time from leaving this house until the vehicle was stopped. He said that he did not know any of the other occupants in the vehicle. He was asked if he engaged in conversation with the driver and he stated that he did not. He was asked if the driver knew he was illegally present in the United States to which he replied yes, and that all of the passengers were illegal.

17. Based upon the foregoing facts, I believe there is probable cause to establish that on February 12, 2025, TIMOTEO SON-GONZALEZ transported an alien who was illegally present in the United States for the purpose of private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (a)(1)(B)(i), and that MARIO

MEJIA-NIMAJA, ESTUARDO MORALES-MIRANDA and WILDER NAJERA-ARRIOLA are material witnesses for whom material witness arrest warrants should be issued, pursuant to 18 U.S.C. § 3144.

_____
Stephen Garland
Border Patrol Agent
United States Border Patrol
Jacksonville, Florida

Sworn to and subscribed before me this 18 day of February 2025.

_____
LAURA LOTHMAN LAMBERT
United States Magistrate Judge

9